The TRAVELERS INDEMNITY
COMPANY, Appellant,

v.

J. Arthur NIEMAN and John Courtny
Schneider, Appellees.

Court of Appeals of Kentucky.

Sept. 16, 1977.

Rehearing Denied Nov. 18, 1977.

Discretionary Review Denied
April 25, 1978.

James G. Apple, T. Kennedy Helm, III, Stites, McElwain & Fowler, Louisville, for appellant.

Fielden Woodward, Woodward, Hobson & Fulton, Louisville, for appellees.

Before COOPER, REYNOLDS and WINTERSHEIMER, JJ.

COOPER, Judge.

This is an appeal from a judgment in the Jefferson Circuit Court awarding appellees the sum of $10,000, the amount of settlement of a civil action with third parties, plus $2,275.00 attorneys' fees.

This action was filed in the Jefferson Circuit Court, Common Pleas Branch, on February 27, 1973, by appellees, J. Arthur Nieman and John Courtny Schneider against the appellant, The Travelers Indemnity Company, hereinafter Travelers. The complaint alleged that a certain insurance policy issued to Louisville Apothecary, Inc. covered Nieman and Schneider against damages sought in an action filed earlier in the same court by one Cebert Barnes against Nieman and Schneider and Louisville Apothecary, Inc. as a result of Nieman and Schneider illegally and on numerous occasions selling a dangerous drug, Obedrin LA, an amphetamine type narcotic, to Barnes' wife. An amended complaint also alleged that Travelers was estopped from denying coverage. Neiman and Schneider sought recovery from Travelers in the amount of a settlement of $10,000 negotiated by them with Mr. and Mrs. Barnes in connection with the civil action and criminal proceedings against them. They claimed damages in the amount of $10,000 plus attorneys' fees of $2,275.00.

Travelers filed an answer setting up the insurance policy and its specific provisions as a defense denying that it was estopped to deny coverage, and alleging that the settlement with Barnes was a settlement to dispose of criminal claims against them by Barnes' wife and was made by them as volunteers, for which Travelers had no responsibility and no liability.

A trial was held before the lower court on May 28, 1974. The court, in essence, found:

(1) that the policy of insurance in question covered the appellees on the Barnes' claim against them;

(2) that Travelers was estopped to deny coverage; and

(3) that appellees were entitled to be awarded attorneys' fees.

Judgment was entered on these findings of fact and conclusions of law on November 15, 1974.

Nieman and Schneider, appellees, were and are pharmacists for Louisville Apothecary, Inc., a corporation which operated eight (8) pharmacies in the Louisville area. Nieman, who is also president of Louisville Apothecary, Inc., worked at the Broadway store and Schneider was the manager of the store on Preston Street. Both acted in the stores as pharmacists, filling prescriptions and dispensing drugs.

In December, 1968, Mrs. Cebert Barnes contacted Dr. Earl Roles about her weight problem. Dr. Roles prescribed a weight reducing drug, Obedrin LA, for Mrs. Barnes. This drug is an amphetamine type drug and controlled by the drug laws of Kentucky.

Mrs. Barnes took the prescription to the Broadway store of the Louisville Apothecary, where it was filled by Nieman, the pharmacist on duty.

Thereafter, Mrs. Barnes took the amphetamine pills once a day and this continued for approximately six months. She would refill her prescription at the Broadway store each time she needed the amphetamine pills. After six months, she started taking two pills a day, and in 1970 she started taking two pills two or three times a day. This consumption gradually increased until she was taking fifteen (15) pills a day. Approximately one year after she first had the prescription filled, Nieman told her she could buy the pills at the Preston Street store of Louisville Apothecary, and called Schneider and told him it was all right to sell her the amphetamine pills. Thereafter, she bought the pills at both stores. At first she was charged $5.80 for 40 tablets but this price was increased to as high as $20.00. When Mrs. Barnes moved to Florida in 1970 with her husband, Nieman would mail her pills to her.

Her narcotic habit was causing marital difficulties, beginning in late 1970 or early 1971.

Mrs. Barnes' husband had advised the police about her habit and Mrs. Barnes went to the police in March, 1971. She told the police that she had been buying the pills from Louisville Apothecary and was told that she would have to buy them with a policeman present before any prosecution could proceed. She gave a statement to Lt. Childress of the Louisville Police Department. She went to both the Broadway and Preston Street stores on several occasions in March, 1971, and purchased the amphetamine tablets with the police present. On none of these occasions did Nieman or Schneider call Dr. Roles' office for approval to refill the prescription, although it had been over two years since the original prescription was written.

As a result of Nieman and Schneider unlawfully selling amphetamines to Mrs. Barnes without a prescription, both men were arrested on or about March 30, 1971. Later, on November 8, 1971, both men were indicted by the Jefferson County grand jury, each charged with two counts of unlawfully selling amphetamine tablets known as Obedrin LA. These were felony charges.

In February of 1972, both men pleaded guilty to two counts each of violations of KRS 217.735 and each man was fined $300 on each count or a total of $600 plus costs.

In May, 1971, Mrs. Barnes' husband, Cebert Barnes, filed suit against Nieman,

Schneider and Louisville Apothecary, Inc. for damages. The appellants' attorneys filed an answer, but later withdrew as attorneys for Nieman and Schneider stating that the activities complained about were beyond the scope of the policy; however, they remained as attorneys for Louisville Apothecary, Inc.

Immediately before the criminal trial, involving the felony indictments against Nieman and Schneider, their attorney in the criminal cases negotiated a settlement with Mr. and Mrs. Barnes. Under the agreement, Nieman and Schneider agreed to pay the Barnes the sum of $10,000. Mrs. Barnes agreed not to testify in the criminal cases, and Nieman and Schneider agreed to plead guilty to lesser misdemeanor charges.

The specific testimony appears on pages 35–36 of the Transcript of Testimony as follows:

Q. And with respect to that settlement, Mr. Nieman, was the settlement agreed, did that relate to Mrs. Barnes and both Mr. and Mrs. Barnes dropping the charges against you in consideration of your paying them a settlement sum?

A. No, I can't answer that because it was agreed to pay them, and as far as the criminal charges, it would be charged (sic) to a misdemeanor.

Q. That was the terms of the settlement?

A. Yes, sir.

The pre-trial disposition sheet in the criminal file, dated February 29, 1972, which was the day after the settlement was completed, shows that the charges against the two men were reduced to misdemeanors to which they pleaded guilty and paid fines of $600 each for two counts. The pretrial disposition sheet specifically contains the reason for the amended charges, ". . . prosecuting witnesses will not testify on advice of her attorney because of possible incrimination." At the bottom of the sheet is contained the settlement, "I do not desire to testify—Margie Barnes."

It should also be noted that the settlement amount was paid to both Mr. and Mrs. Barnes, even though Mrs. Barnes was not a party to the civil action and had made no claim against Nieman, Schneider, Louisville Apothecary or Travelers, but was the prosecuting witness in the criminal case. Also the evidence reveals that the settlement was arranged by Nieman and Schneider's attorney in connection with the criminal charges, who had no involvement in the pending civil action.

Nieman and Schneider were billed for $2,275.00 for attorneys' fees. Action was filed against Travelers for the total settlement of $12,275 which included the attorneys' fees.

Many issues and theories have been argued in this case, but we feel it can be decided in the following:

1. Whether the trial court erred in concluding that the policy of the appellant, Travelers, covered appellees, J. Arthur Nieman and John Courtny Schneider, in a civil action against them for wrongfully selling a narcotic drug.

2. Whether the trial court erred in concluding that the appellant, Travelers, was estopped from denying coverage to appellees, Nieman and Schneider.

■ Under the exclusions in the policy, the insurance does not cover bodily injury or property damage caused by the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured, or a store manager employed by the named insured.

The appellees, Nieman and Schneider, very willfully, flagrantly, illegally and with full knowledge of their acts, violated a penal statute not once, but for a number of years, even to the extent of illegally mailing Mrs. Barnes pills to Florida in 1970, when she left Louisville. We hold that these illegal activities come within the exclusions of the insurance policy.

■ Travelers gave timely notice to appellees that it reserved the right to withdraw, at anytime, from defense of the civil action. Since appellees suffered no detriment from withdrawal, Travelers is not estopped to deny coverage. In the Annotation on this subject at 38 A.L.R.2d 1148, the text states at page 1161:

As noted in the original Annotation, it is a well established rule that a liability insurer cannot be estopped to set up the defense that the insured's loss was not covered by the insurance policy, notwithstanding the insurer's participation in the defense of an action against the insured, if the insurer gives timely notice to the insured that it has not waived the benefit of its defense under the policy.

Kentucky follows this rule.

In *Universal Underwriters Insurance Co. v. Travelers Insurance Co.*, Ky., 451 S.W.2d 616 (1970), the court held, under facts analogous to the present case, that the withdrawal of an insurance company from the defense of the case did not constitute such prejudice as would give rise to estoppel.

It is the policy of this Court to uphold the judgment of the trial court, unless it is clearly erroneous and not supported by the evidence. We have examined the record in this case, and find it to be clearly erroneous.

The judgment is reversed and remanded to the trial court with direction to enter judgment dismissing the complaint against Travelers with prejudice.

All concur.